```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

JAMES A. HARNAGE,                :
    Plaintiff,               :
                              :
    v.                        :   Civil No. 3:15-cv-1035(AWT)
                              :
S. BARRONE, et al.,              :
    Defendants.               :

## RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, James A. Harnage, commenced this civil rights action pro se, but is now represented by counsel. The remaining defendants are: Deputy Wardens S. Barrone and S. Frey; Warden Chapdelaine; former Warden Peter Murphy; Captains VanOudenhave and Hall; Lieutenants Roy, Kitt, Allison and Houston; and Correctional Officers Maloid, Anderson, Nolan, Taylor, Brito, Gonzalez, Vamos (younger), Vamos (older), McCormack, Boyd, Tyburski, Griffith and Scott. The only remaining claims are a Fourth Amendment privacy challenge to the policy prohibiting use of a privacy sheet, and a parallel claim under the Connecticut Constitution. The defendants have moved for summary judgment. For the reasons that follow, the motion is being granted as to the federal claim, and the court declines to exercise supplemental jurisdiction over the claim under the Connecticut Constitution.

I.    **LEGAL STANDARD**

A motion for summary judgment may be granted only where

there are no issues of material fact in dispute and, based on those undisputed facts, the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). The moving party may satisfy his burden "by showing—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). To defeat the motion for summary judgment, he must present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). The nonmoving party "must offer some hard evidence showing that its version is not wholly fanciful." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).

## II. FACTS[1]

Between April 2007 and January 2014, defendant Peter Murphy was the warden at MacDougall-Walker Correctional Institution ("MacDougall"). As warden, defendant Murphy was responsible for

---

[1] The facts are taken from the parties' Local Rule 56(a) Statements and exhibits.

2

overseeing the operations of the facility.  Safety and security are paramount considerations in running a correctional facility.  Thus, the Department of Correction and the individual correctional facilities have many rules to ensure the safety and security of inmates, staff and the public.

To ensure safety and security, inmates are prohibited from obstructing a clear view into their cells.  Many rules addressing this issue are found in the MacDougall Handbook.  One rule provides:  "You are not permitted to cover light fixtures, to hang drapery over the front of your cell door or window, or to obstruct an open view into your cell."  Defs.' Mem. Ex. 1, Murphy Aff., ¶6, ECF No. 126-3 & Attach. 1, MacDougall Handbook, at 11, ¶¶9, 10, ECF No. 126-3 at 19.  Another rule provides: "You are not permitted to cover your bed in a tent fashion.  Nothing may be affixed to any part of the bunk."  Id.

MacDougall issued notices to all inmates emphasizing these rules.  The relevant notice provides:

> Cell Obstructions.  Inmates are not allowed to cover their cell window or have any type of obstruction blocking staff view into their cells.  This includes having a sheet up while their cell partner is using the bathroom.  Inmates who block their window or hang sheets are to receive a Class 'A' disciplinary report for Interfering with Safety and Security.

Id. ¶7 & Attach. 2, Notice to Population, ECF No. 126-4 at 74.

The plaintiff uses a privacy sheet, fashioned from a bed

sheet, to shield himself from view by his cellmate while using the toilet. Defendant Murphy has determined that privacy sheets interfere with correctional staff's clear and unobstructed view into the cells.

If the view into a cell is obstructed, an inmate could be engaging in activity that would endanger safety and security of staff or other inmates, and staff would not be able to detect the activity.

There are two types of cells at MacDougall. One has the toilet attached to the front wall, the other has it attached to the back wall. The doors to all of the cells are located to one side of the cell. Defendant Murphy states that any sheet hanging in either type of cell would obstruct the view of some portion of the cell because of the angle of the correctional officer's view. During his deposition the plaintiff conceded that a privacy sheet would obstruct a correctional officer's view of the interior of the cell in both types of cells. In the type of cell where the toilet is located on the back wall and the privacy sheet is hung perpendicular to the cell door, the plaintiff testified:

> Q: But there were parts of the cell that the officer couldn't see?
> A: The one-eighth section of the back wall where the anchor held the sheet to it . . . .

Defs.' 56(A)(1), ECF No. 126-1 at 5. With respect to the type

4

of cell where the toilet is located on the front wall and the privacy sheet is hung parallel to the cell door, the plaintiff testified:

> Q: But you agree that the use of privacy sheets does limit some of the view into the cell?
> A: In the up-top housing units during the time it's being used, yes. But you can still see into the cell. You just can't see all of the cell.

Id.

The plaintiff was not prevented from using a towel or sheet to cover himself while using the toilet. The plaintiff also could use the toilet while his cellmate was at recreation.

**III. DISCUSSION**

Although the Complaint has two counts, each is a challenge to the implementation and enforcement of the policy prohibiting the use of a privacy sheet by an inmate to prevent him being viewed by his cellmate when he is using a toilet. Count One challenges the policy as a violation of the plaintiff's right to privacy, as a violation of his right to be free from unreasonable searches and as a violation of the Eighth Amendment prohibition against cruel and unusual punishment. Count Two merely adds an additional contention that the policy is not being enforced as written. The plaintiff alleges that "[t]he policy is written in a manner that suggests a reference to permanent obstructions" and a privacy sheet does not "actually obstruct an open view into the cell" but rather, "only limits

the view of the inside of the cell."  Compl. ¶¶76, 79, ECF No. 1 at 9-10.  In Count Two the plaintiff also challenges the policy as a violation of the plaintiff's right to privacy, as a violation of his right to be free from unreasonable searches and as a violation of the Eighth Amendment prohibition against cruel and unusual punishment.  However, given the plaintiff's concession during his deposition that a privacy sheet limits the view into a cell regardless of which type of cell it is, Count One and Count Two are but one claim.

The defendants moved to dismiss all claims, and the court granted in part the defendants' motion to dismiss.  All Eighth Amendment claims, all Fourth Amendment search claims and all substantive due process claims, including all claims against individual female and male correctional staff for viewing the plaintiff while he was using the toilet, were dismissed.  See ECF No. 63.  In the ruling dismissing the claims against the individual correctional staff for viewing the plaintiff while he was using the toilet, the court took note of the fact that courts distinguish between one time or infrequent viewing of inmates who are performing bodily functions and situations where inmates are viewed on a regular or frequent basis while performing bodily functions.  See, e.g., McMillian v. County of Onondaga, 2015 WL 1403459, at *13 (N.D.N.Y. Mar. 26, 2015) (regular watching by guards violates right to privacy) (citing

6

Miles v. Bell, 621 F. Supp. 51, 67 (D. Conn. 1985)); McGee v. Pallito, Civil Action No. 1:10-CV-11, 2011 WL 6291954, at *22-23 (D. Vt. Aug. 3, 2011) (distinguishing one-time or infrequent viewing by female officers of male inmates using toilet, from allegation of denial of privacy several times per day over several days without reasonable justification; the latter regular conduct by correctional staff states a plausible privacy claim), report and recommendation adopted by, 2011 WL 6294202 (D. Vt. Dec. 15, 2011).

The only remaining claims are the Fourth Amendment privacy claim regarding implementation and enforcement of the policy prohibiting use of a privacy sheet to prevent viewing by his cellmate while the plaintiff is using the toilet and the parallel claim under the Connecticut Constitution. The defendants move for summary judgment on two grounds. First, they argue that the implementation and enforcement of the policy does not violate the plaintiff's Fourth Amendment right to privacy. Second, they argue that they are shielded from liability by the doctrine of qualified immunity.

The doctrine of qualified immunity shields government officials from liability for damages unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. See Reichle v. Howards, 566 U.S. 658, 664 (2012). All of the defendants are

7

sued for damages and are named in an individual capacity only. Thus, a finding that the defendants are shielded by qualified immunity from liability on a claim resolves that claim.

When analyzing a claim of qualified immunity under 42 U.S.C. § 1983, the court must consider two questions. First, did the defendant, in fact, violate a constitutional right. Second, were the contours of that right "sufficiently clear that a reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 136 S. Ct. 305, 314-15 (2015)(quoting Saucier v. Katz, 533 U.S. 194, 202 (2001) (internal quotation marks omitted)).

The contours of the right must be "'sufficiently definite that any reasonable official in [the defendant's] shoes would have understood that he was violating it,' meaning that 'existing precedent . . . placed the statutory or constitutional question beyond debate.'" City & Cty. Of San Francisco, Calif. v. Sheehan, 135 S. Ct. 1765, 1774 (2015) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). Although the Supreme Court does not require that the exact actions have previously been held unconstitutional, "[r]ights must be clearly established in a 'particularized' sense, rather than at a high level of generality; and such rights are only clearly established if a court can 'identify a case where an offic[ial] acting under similar circumstances' was held to have acted

8

unconstitutionally." White v. Pauly, 137 S. Ct. 548, 552 (2017). See also Wilson v. Layne, 526 U.S. 603, 617 (1999) ("Petitioners have not brought to our attention any cases of controlling authority in their jurisdiction at the time of the incident which clearly established the rule on which they seek to rely, nor have they identified a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.").

"This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law." Sheehan, 135 S. Ct. at 1774 (quoting al-Kidd, 563 U.S. at 744); Grice v. McVeigh, 873 F.3d 162, 166 (2d Cir. 2017) (qualified immunity standard is forgiving, protecting all but those who are plainly incompetent or who knowingly violate the law)(citations omitted).

The district court has the discretion to determine, in light of the particular circumstances surrounding the case, which of the two prongs of the qualified immunity standard to address first. See Johnson v. Perry, 859 F.3d 156, 170 (2d Cir. 2017)(quoting Pearson v. Callahan, 555 U.S. 223, 236 (2009)).

With respect to the plaintiff's use of a privacy sheet to shield himself from view by his cellmate while using the toilet, neither the Supreme Court nor the Second Circuit has held that

9

inmates have a right to privacy that includes not being viewed by their cellmates. The cases finding a Fourth Amendment right to privacy concern either, as mentioned above, regular or frequent viewing of inmates by correctional staff of inmates performing bodily functions, or viewing of naked inmates by correctional officers of the opposite sex. See Harris v. Miller, 818 F.3d 49 (2d Cir. 2016) (visual inspection of female inmate's genitalia by male officer); Johnson v. Tremper, 38 F. App'x 665, 668 (2d Cir. 2002) (noting that inmates' right to privacy includes freedom from involuntary viewing of private parts by guards of opposite sex); Covino v. Patrissi, 967 F.2d 73 (2d Cir. 1992) (recognizing limited Fourth Amendment right to bodily privacy but denying preliminary injunction against random visual body cavity search).

Moreover, the court's reasoning in Rodriguez v. Ames, 287 F. Supp. 2d 213 (W.D.N.Y. 2003) suggests that there is no such right. There, the inmate complained when the doctor performed an initial examination of the inmate's bowel condition in his cell in the presence of his cellmate. Although the court was considering an Eighth Amendment claim, it cited Covino as the source of an inmate's limited right to bodily privacy. See id. at 220. The court rejected the plaintiff's claim, stating:

> this case concerns an embarrassing circumstance of prison life that does not rise to the level of a constitutional

> violation.  Prisoners do retain a limited
> right to bodily privacy. . . . However, as
> with all constitutional rights, plaintiff
> retains that right in prison only insofar as
> it is consistent with his status as a
> prisoner. . . . In this regard, there are
> many unfortunate and embarrassing
> circumstances prisoners must endure as part
> of their daily lives.  Many prisoners, like
> the plaintiff here, share their cells with
> others and have very little privacy in
> certain daily activities.  However, "routine
> discomfort is 'part of the penalty that
> criminal offenders pay for their offenses
> against society.'"

Id. at 220-21 (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981))).  Accord Sanders v. Kingston, 53 F. App'x 781, 784 (7th Cir. 2002) ("Because the need to watch prisoners closely is a legitimate institutional concern, a prisoner is entitled to little if any privacy, even when using the bathroom or taking a shower."); Smith v. Corrections Corp. of Am. Torrence County, No. CV 16-01201 MCA/GJF, 2018 WL 550592, at *5 (D.N.M. Jan. 23, 2018) (rejecting Fourth Amendment privacy claim based on visual strip search conducted in presence of other correctional officers and cellmate; "[c]ellmates, when present, were not forced to watch the strip search and were directed to turn around, comparable to actions inmates take when using the cell toilet with the cellmate present.").

So even if the court were to conclude that prohibiting a prisoner from using a privacy sheet to shield himself from being

viewed by his cellmate while he was using the toilet violated a prisoner's limited right to bodily privacy, because there is no case holding that a prisoner has such a privacy right, a reasonable correctional officer would not have been on notice that prohibiting the use of a privacy sheet for that purpose was unconstitutional.  Therefore, the defendants are shielded from liability by the doctrine of qualified immunity with respect to the plaintiff's Fourth Amendment privacy claim.  Accordingly, the defendants' motion for summary judgment on the federal claim on the grounds of qualified immunity is being granted.

    Pursuant to 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction".  In United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966), the Court observed that principles of comity, federalism, and the interests of justice dictate that needless decisions of state law should be avoided.  Here declining to exercise supplemental jurisdiction is particularly appropriate.  In ruling on the motion to dismiss the court declined to abstain, pursuant to Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), from entertaining this case even though the plaintiff was pursuing a similar claim in state court.  The factor on which the court placed great weight in declining to

abstain was the presence of a federal issue, and there is no longer a federal issue in this case. Therefore, the court declines to exercise supplemental jurisdiction over the claim under the Connecticut Constitution.

**IV. CONCLUSION**

The defendants' motion for summary judgment [ECF No. 126] is hereby GRANTED. The Clerk is directed to enter judgment in favor of the defendants on all of the plaintiff's federal claims, and the court declines to exercise jurisdiction over the plaintiff's state law claims.

The Clerk shall close this case.

It is so ordered.

Signed this 19th day of September 2018 at Hartford, Connecticut.

                                            /s/AWT
                                Alvin W. Thompson
                       United States District Judge